In re William R. MORGAN and Janice J. Morgan, Debtors.

KANSAS DEPT. OF REVENUE, Plaintiff,

v.

William R. MORGAN and Janice J. Morgan, Defendants.

Bankruptcy No. 94–21379–7.
Adversary No. 95–6191.

United States Bankruptcy Court,
D.   Kansas.

June 13, 1997.

J.D. Befort, Topeka, KS, for Plaintiff.

Richard M. Beheler, Blackwell, Sanders, Matheny, Weary & Lombardi, P.C., Kansas City, MO, for Defendants.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

The Kansas Department of Revenue ("KDOR") filed this adversary complaint to determine the priority and dischargeability of its income tax claims against the debtors.[2] The facts are stipulated in a pretrial order. The Court concludes that the KDOR holds a nondischargeable, general unsecured claim.

---

1. Plaintiff Kansas Department of Revenue appears by its attorney, J.D. Befort, Topeka, Kansas. Debtors/defendants William R. and Janice J. Morgan appear by their attorney, Richard M. Beheler of Blackwell, Sanders, Matheny, Weary & Lombardi, P.C., Kansas City, Missouri.

2. The Court finds that this proceeding is core under **28 U.S.C. § 157** and that the Court has jurisdiction under **28 U.S.C. § 1334** and the general reference order of the District Court effective July 10, 1984 **(D. Kan. Rule 83.8.5)**.

## THE FACTS

William R. and Janice J. Morgan filed joint federal and Kansas income tax returns for 1983 and 1984. Under Kansas law, the adjusted gross income reported on the federal return is used to figure the Kansas return.

The IRS adjusted the Morgans' federal returns in a Revenue Agent's Report ("RAR") on September 2, 1992, and sent the report to the Morgans. Although the record does not reflect the exact date, the Morgans received the report in September 1992. According to the RAR, the Morgans owed additional federal and Kansas income tax for 1983 and 1984. Nevertheless, the Morgans did not file amended Kansas returns for those two tax years.

The KDOR received the RAR from the IRS on June 29, 1993, but took no action to assess additional income taxes until after the Morgans commenced this bankruptcy case on July 29, 1994. On August 16, 1995, the KDOR mailed the Morgans a notice that assessed $45,257.21 in additional income taxes for 1983 and 1984 and advised them of their right to appeal the assessment within 60 days. The Morgans did not appeal, but they did amend their bankruptcy Schedule F on September 28, 1995, to show the KDOR as a creditor with an unsecured, nonpriority claim of $45,257.21.

The KDOR then filed a Proof of Claim for $43,116.96. The discrepancy in amount between the Proof of Claim and the amended Schedule F results from the calculation of interest over different time periods. The smaller figure reflects interest calculated to the date of the bankruptcy petition, July 29, 1994. The parties have agreed that if the KDOR's claim is ruled nondischargeable, it should be fixed and allowed at $43,116.96. They have not agreed on whether the claim will be a priority claim or a general unsecured claim.

## APPLICABLE KANSAS LAW

■ When the IRS adjusts the federal income tax returns of Kansas taxpayers, **Kan. Stat. Ann. § 79–3230(f) (1989)** guides the taxpayer and the Kansas Department of Revenue. According to the statute, taxpayers shall mail amended Kansas income tax returns to the Department, accompanied by the RAR, within 180 days of the date the federal adjustments are paid, agreed to or become final, whichever is earlier:

(f) Any taxpayer whose income has been adjusted by the federal internal revenue service is required to report such adjustments to the Kansas department of revenue by mail within 180 days of the date the federal adjustments are paid, agreed to or become final, whichever is earlier. Such adjustments shall be reported by filing an amended return for the applicable taxable year and a copy of the revenue agent's report detailing such adjustments.

Since the Morgans failed to file amended returns for 1983 and 1984 accompanied by the RAR, they breached their duty under this law.

When the KDOR receives an amended return and RAR, it has 180 days to assess any additional Kansas tax due as a result of the federal adjustments:

Notwithstanding the provisions of subsection (a) or (c) of this section, additional income taxes may be assessed and proceedings in court for collection of such taxes may be commenced and any refund or credit may be allowed by the director of taxation within 180 days following receipt of any such report of adjustments by the Kansas department of revenue.

■ Since the Morgans failed to file amended returns accompanied by the RAR, KDOR was not obligated to act within the 180–day period for two reasons: the 180–day period was not triggered by receipt of an amended return, and the 180–day period was tolled by the terms of subsection (g) of the statute:

(g) In the event of failure to comply with the provisions of this section, the statute of limitations shall be tolled.

This subsection tolled the 180–day period for department action when the Morgans failed to amend their tax returns within the statutory time.

In their briefs, the Morgans argue that the KDOR's receipt of the RAR on June 29, 1993, triggered the running of the 180–day period for assessing taxes due and that when

that period expired, the KDOR was forever barred from assessing taxes due. This argument overlooks the statute's command that "Such adjustments shall be reported by filing an amended return for the applicable taxable year and a copy of the revenue agent's report detailing such adjustments."

[3] Like the federal income tax system, the Kansas system is based on taxpayer self-assessment. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977)(acknowledging the self-assessment nature of the federal income tax system); *Walkemeyer v. Stevens County Oil & Gas Co.,* 205 Kan. 486, 489, 470 P.2d 730, 733 (1970)(referring to the "assessment of oil and gas property in Kansas [as] essentially a self assessment system similar to our state and federal income tax system"). Taxpayers must file income tax returns showing the basis for taxes due or refundable. The KDOR examines the returns for compliance with the law and mathematical correctness. If returns are correct, the Department assesses taxes according to the amounts stated in the returns. If the Department determines taxpayers have overpaid through withholdings, it assesses the taxes and issues refunds. If it finds additional taxes are due, it makes deficiency assessments, permitting the taxpayers due process of law. Without returns being filed, the Department lacks the information essential to determine taxpayers' liabilities.

This system places the burden on taxpayers to initiate the assessment process. If the legislature had intended to bypass this procedure when RAR adjustments were called for, it would have said so expressly. Instead, it required taxpayers to follow the customary procedure of filing amended returns and it directed that RARs accompany the returns. To adopt the Morgans' theory that the KDOR must make deficiency assessments under a time limitation without first having received amended returns cuts against the self-assessing nature of the Kansas income tax system and benefits taxpayers who have failed to comply with that system. Consequently, the Kansas statute must be read to relieve the KDOR of any time limitations on

assessments absent receipt of amended returns.

*FEDERAL LAW*

Exceptions to discharge under the Bankruptcy Code are found in § 523. In this case, the relevant provisions appear in § 523(a)(1) dealing with tax debts:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section ... 507(a)(8) of this title ...;

(B) with respect to which a return, if required—

(i) was not filed....

■ Kansas law required the Morgans to file amended returns. They failed to file; ergo, the tax debt was not discharged under § 523(a)(1)(B).

[5] The final question is whether the nondischargeable tax claim has priority in the Chapter 7 distribution, a question answered by § 507(a)(8):

(a) The following expenses and claims have priority in the following order:

. . . .

(8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

. . . .

(iii) other than a tax of a kind specified in section 523(a)(1)(B) .... of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case....

If under applicable law, a tax measured by income is not assessed before commencement of a case, but is assessable after commencement of a case, § 507(a)(8)(A)(iii) classifies the tax as a priority claim. At first blush, applicable law appears to dictate this result. Under the Kansas statute, the Department was subject to no time limit to assess additional taxes measured by income. The taxes

**534**

were not assessed before the commencement of the Morgans' bankruptcy case on July 29, 1994. The taxes were assessed in fact after that date, on August 16, 1995, and the taxes were assessable under applicable Kansas law after the commencement of the case.

But there is more for analysis: the effect of the qualifying phrase at the beginning of § 507(a)(8)(A)(iii), which reads "other than a tax of a kind specified in section 523(a)(1)(B)." This phrase makes § 507(a)(8)(A)(iii) inapplicable because, as held above, the tax is of "a kind specified in section 523(a)(1)(B)." Consequently, KDOR's tax claim receives no priority.

This result is anomalous. Although KDOR's claim is nondischargeable under § 523(a)(1)(B) because the Morgans did not file amended returns, the claim lacks priority. If the Morgans had amended their returns, however, the claim would have priority under § 507(a)(8)(A)(iii) and be nondischargeable as well. Such nondischargeability flows from § 523(a)(1)(A) which excepts tax claims from discharge if they are classified as priority claims under § 507(a)(8). Nevertheless, in matters of statutory interpretation, all must go where Congress leads. The Court rules that the KDOR's tax claim for $43,116.96 is a nondischargeable, general unsecured claim.

The foregoing discussion shall constitute findings of fact and conclusions of law under **Fed. R. Bankr.P. 7052** and **Fed.R.Civ.P. 52(a)**. A judgment reflecting this ruling will be entered on a separate document in compliance with **Fed. R. Bankr.P. 9021** and **Fed. R.Civ.P. 58**.

IT IS SO ORDERED.