Richard W. BLY; Patsy A. Bly; and Bank of the West, f/n/a/ Community First National Bank, f/n/a The Bank, N.A., Petitioners

v.

Tamara L. STORY, Respondent.

No. 09SC189.

Supreme Court of Colorado, En Banc.

Oct. 18, 2010.

Rehearing Denied Nov. 8, 2010.*

* Justice Rice and Justice Eid would grant the petition.

Duncan, Ostrander & Dingess, P.C., Robert R. Duncan, James Birch, Denver, Colorado, Attorneys for Petitioners.

Burns, Figa & Will, P.C., Geoffrey P. Anderson, Greenwood Village, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

In this private condemnation action for a non-exclusive access easement across an existing driveway, we are charged with determining what level of specificity a petition for condemnation must contain and whether the trial court erred in excluding valuation evidence based on a particular appraisal method. We review the court of appeals' decision in *Story v. Bly*, 217 P.3d 872 (Colo.App. 2008).[1] The trial court granted Story's petition for condemnation, and a jury awarded the Blys $3,300 for the easement and $9,200 for damages to the residue. *Id.* at 876. The court of appeals affirmed. *Id.* at 883.

Petitioners Richard and Patsy Bly ("Condemnees") assert that the trial court erred in denying their motion to dismiss respondent Tamara Story's ("Condemnor") petition for private condemnation because the petition failed to provide a legal description of the easement sought and to specify the particular use for which Condemnor intends to obtain the easement. We disagree.

Condemnees also assert that the trial court abused its discretion by excluding evidence of the fair market value of the easement based on the cost of constructing the driveway improvement. Again, we disagree.

The plain language of section 38–1–102(1), C.R.S. (2010), requires that a petition for condemnation provide a description of the property to be condemned and the purpose for which the property is to be condemned; it does not require the petitioner to provide a metes and bounds legal description of the property or to specify the particular uses for which the property is to be condemned. We

hold that Condemnor's petition contained an adequate description of the location of the easement over the existing driveway and of the easement's purpose as a private way of necessity. Accordingly, we affirm the court of appeals' judgment finding that the trial court properly denied Condemnees' motion to dismiss the petition.

We also hold that, although valuation evidence based on the cost of construction method of appraisal was admissible, the trial court's exclusion of that evidence was not an abuse of discretion. Thus, we affirm the court of appeals' judgment finding that the trial court did not abuse its discretion in excluding this valuation evidence.

## I.

Condemnor owns a vacant, forty-five-acre, landlocked parcel in the mountains of Jefferson County, west of Denver. The parcel has no public or private means of access. After unsuccessfully attempting to negotiate purchase of an access easement to use an existing driveway across a neighboring eighty-acre parcel owned by Condemnees, Condemnor brought this private condemnation action to obtain the easement.[2]

The driveway begins at a county road and passes through Condemnees' eighty-acre parcel. Condemnees, their son, and his family use the driveway to access their residence. Condemnees' caretaker also uses the driveway to access his residence. The driveway then crosses through Condemnor's parcel and terminates at another neighboring property located on the opposite side of Condemnor's parcel. Those neighboring landowners use the driveway to access their property as well. The driveway pre-existed Condemnees' 1984 purchase of the eighty-acre parcel.

---

1. We granted certiorari on the following issues: Where the Petition in Condemnation did not identify the scope of the condemnor's uses and purposes and lacked a legal description of the easement being acquired, whether the court of appeals erred in ruling the Petition was adequate.
 Where the court of appeals acknowledged "no expert here could find comparable sales of driveway easements," and where it was undis-

 puted that the Income Method cannot be applied, whether the panel erred in precluding the jury from hearing valuation evidence based on the only remaining appraisal method, the Cost Method, and the cost of constructing the driveway.

2. Petitioner Bank of the West holds a mortgage on Condemnees' property.

Condemnor brought this private condemnation action pursuant to article II, section 14 of the Colorado Constitution and section 38–1–102, seeking "to condemn a 20–foot wide easement over and across an existing dirt access road ... [to] provide[ ] physical access" to her landlocked property. Petition for Private Condemnation, ¶ 9. The petition asserted that Condemnor "requires immediate possession of the [driveway] in order to access [her p]roperty, and to permit the use and enjoyment of that property." *Id.* ¶ 16. The petition described the easement sought as a "private way of necessity," *id.* ¶ 12, but it did not provide any additional description of Condemnor's intended uses for the easement. Nor did the petition provide a metes and bounds legal description of the easement's location. It did, however, provide legal descriptions of both Condemnor's and Condemnees' parcels and attached a U.S. Geological Survey map depicting the driveway in relation to the two parcels. Condemnor subsequently provided to the trial court a metes and bounds legal description of the easement.

Condemnees moved to dismiss the petition on the grounds that it failed to provide adequate descriptions of the location of the easement sought and of the purpose, or intended uses, for the easement. At both her deposition and the motion hearing, Condemnor clarified her intended uses as constructing, building, maintaining, and accessing one single-family home. She did not amend the petition.

The trial court denied Condemnees' motion to dismiss, finding the petition adequate. The trial court determined that Condemnees were not confused as to the location of the easement and that Condemnor's subsequent filing of a legal description was sufficient to allow the court to enter its final order of condemnation. The trial court also found adequate Condemnor's description of the purpose of the easement as a private way of necessity, particularly given her clarifying testimony that she seeks access only for one single-family home and the fact that Condemnees were not deceived by her failure to specify her intended uses.

In the same order, the trial court granted Condemnor's petition on its merits. The trial court condemned the access easement in perpetuity "for the use required for [Condemnor] to build, construct, reside in, and maintain one (1) single-family residence on [her p]roperty." The order provided a metes and bounds legal description of the easement. The trial court also granted Condemnor immediate possession of the easement upon payment of a $1,000 bond.

In preparation for a jury trial to determine just compensation for the partial taking, Condemnor filed a motion in limine attempting to exclude Condemnees' expert testimony regarding, inter alia, the contributory value of the driveway improvement, based on the cost of construction appraisal method. The expert was prepared to testify as to the cost necessary to construct the same driveway, were the driveway not already in existence: in other words, a replacement driveway. Although it did not explicitly rule on the motion in limine, the trial court excluded the testimony at trial, determining that the cost of constructing the driveway was not relevant to the market value of the non-exclusive access easement over the existing driveway. Consequently, the trial court allowed valuation evidence based only on the comparable sales method of appraisal.[3]

The jury awarded Condemnees $3,300 for the easement and $9,200 in damages to the residue of the property.[4] The trial court

---

**3.** It is undisputed that the third available appraisal method, the income method, is inapplicable to this case because the driveway does not produce any income. Although comparable sales of nonexclusive access easements over existing driveways were not available, the parties' appraisers considered sales of comparable properties with and without driveway improvements.

**4.** Condemnees' appraiser valued the easement at $7,857, or one-third of a per-acre value of

$16,500, based on comparable sales, of the approximately 1.4 acres encompassed by the easement. The one-third figure was based on the fact that Condemnor will be the third landowner to use the driveway, with Condemnees and their family and the other neighboring landowners being the existing two users.

Condemnor's appraiser valued the easement at $1,215, or one-tenth of a per-acre value of $8,500, also based on comparable sales, of the 1.4 acres affected. The ten-percent figure was

awarded Condemnees approximately one-half of their requested expert witness fee costs.

Condemnees appealed. The court of appeals affirmed the trial court's denial of Condemnees' motion to dismiss and found no abuse of discretion with respect to the trial court's ruling excluding valuation evidence based on the cost of constructing the driveway and its award of only half the requested expert witness fee costs. *Story v. Bly*, 217 P.3d 872 (Colo.App.2008). We granted Condemnees' petition for writ of certiorari on the motion to dismiss and valuation evidence issues.[5]

## II.

The plain language of section 38–1–102(1), C.R.S. (2010), requires that a petition for condemnation provide a description of the property to be condemned and the purpose for which the property is to be condemned; it does not require the petitioner to provide a metes and bounds legal description of the property or to specify the particular uses for which the property is to be condemned. We hold that Condemnor's petition contained an adequate description of the location of the easement over the existing driveway and of the easement's purpose as a private way of necessity. Accordingly, we affirm the court of appeals' judgment finding that the trial court properly denied Condemnees' motion to dismiss the petition.

We also hold that, although valuation evidence based on the cost of construction method of appraisal was admissible, the trial court's exclusion of that evidence was not an abuse of discretion. Thus, we affirm the court of appeals' judgment finding that the trial court did not abuse its discretion in excluding this valuation evidence.

### A. Petition for Condemnation

### 1. Standard of Review

This appeal arises in the context of the trial court's denial of Condemnees' motion to dismiss Condemnor's petition for private condemnation. The parties dispute whether the motion should be treated as a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim. Given that the Colorado Rules of Civil Procedure apply to eminent domain proceedings, *Aldrich v. Dist. Ct.*, 714 P.2d 1321, 1323 (Colo.1986), and that Colorado's eminent domain statutes do not provide an alternative procedure for challenging a petition for condemnation, we treat this appeal as review of a ruling on a C.R.C.P. 12(b)(5) motion.

 We view with disfavor a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1099 (Colo.1995). We review a ruling on a C.R.C.P. 12(b)(5) motion de novo, applying the same standards as the trial court. *Id.; Negron v. Golder*, 111 P.3d 538, 542 (Colo.App.2004). Accepting all allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the trial court properly grants a C.R.C.P. 12(b)(5) motion only where the plaintiff's factual allegations cannot, as a matter of law, support a claim for relief. *Rosenthal*, 908 P.2d at 1099.

 Statutory construction is a question of law subject to de novo review. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo.2010). Our primary objective is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole. *Romanoff v. State Comm'n on Judicial Performance*, 126 P.3d 182, 188 (Colo.2006); *see also* §§ 2–4–101, –201(1)(b), C.R.S. (2010).

 Our review in this case requires us to construe applicable eminent domain statutes. We construe such statutes narrowly and resolve ambiguities in favor of the condemnee landowner. *Coquina Oil Corp. v. Harry Kourlis Ranch*, 643 P.2d 519, 522 (Colo.1982).

based on the appraiser's opinion that the non-exclusive right to use the existing driveway improvement was equivalent to about ten percent of the value of the land affected.

The measure of damages to the residue of the property is not relevant to the issues before us on appeal.

**5.** We denied certiorari on the expert witness fee issue.

### 2. Applicable Law

■ Article II, section 14 of the Colorado Constitution prohibits the taking of private property for private use "unless by consent of the owner" or "except for private ways of necessity," among other exceptions. Condemnation proceedings are conducted strictly according to statutory procedures. *Ossman v. Mountain States Tel. & Tel. Co.*, 184 Colo. 360, 366, 520 P.2d 738, 742 (1974). Section 38–1–102(3) provides that *"private property may be taken* for private use, *for private ways of necessity,* and for reservoirs, drains, flumes, or ditches on or across the lands of others for agricultural, mining, milling, domestic, or sanitary purposes." (Emphasis added.)

A private condemnation proceeding is commenced by filing a petition with the district court where the property is situated. § 38–1–102(1). The petition must include the following information:

> [the condemnor's] authority in the premises, *the purpose for which said property is sought to be taken* or damaged, *a description of the property,* the names of all persons interested as owners or otherwise . . ., and praying such judge to cause the compensation to be paid to the owner to be assessed.

*Id.* (emphasis added). The General Assembly has not specified what a statement of "the purpose" or "a description of the property" requires.

We have not previously construed section 38–1–102(1). In *Platte River Power Authority v. Nelson,* the court of appeals determined that the description in the petition must be sufficient to enable the trial court to enter its order conveying the condemned property. 775 P.2d 82, 83 (Colo.App.1989) (where the petition in *Platte River* lacked any description of the easement sought). With respect to the purpose, the court of appeals interpreted the provision to require that the petition "describe in detail the nature of the use to be made of the land so that the burden on the landowner can be accurately evaluated." *Bear Creek Dev. Corp. v. Genesee Found.,* 919 P.2d 948, 954 (Colo.App. 1996). However, as support, the court of appeals cited an earlier opinion in which it

found adequate a petition describing the use as simply a "slope easement" and *providing* no additional detail. *State Dep't of Highways v. Woolley,* 696 P.2d 828, 830 (Colo. App.1984). In *Woolley,* subsequent testimony further described the slope easement sought, the landowner was not deceived by the lack of detail in the petition, and the landowner's appraiser was able to value the easement. *Id.*

### 3. Application to this Case

■ The language of section 38–1–102(1) requires that a petition for condemnation include "a description of the property" to be condemned. Condemnees ask us to read into this language a requirement that the petition include a metes and bounds legal description. If the General Assembly had so intended, it could have included the word "legal" in the statutory language. Instead, the plain meaning of the statutory language is that the petition must include a general description of the property to be condemned.

In this case, the petition included such a description. It requested a twenty-foot-wide access easement over the existing driveway and attached a map depicting the location of the driveway in relation to the affected properties. Condemnees were not confused as to the location of the driveway, given that it is the only driveway that crosses their eighty-acre parcel—which the petition did legally define—and that it is the only existing means of access to Condemnor's otherwise landlocked parcel. Even assuming, arguendo, that there was uncertainty as to the location of the easement, Condemnor's subsequent production of a metes and bounds legal description cured any uncertainty. Ultimately, the description of the location of the easement was sufficient for the trial court to enter its order of condemnation, which included the legal description of the easement. *See Platte River,* 775 P.2d at 83.

■ Section 38–1–102(1) also requires a description of "the purpose for which said property is sought to be taken." The plain meaning of this language does not require any particular level of detail with respect to the statement of purpose. Considered within

the context of section 38–1–102 as a whole, the General Assembly likely intended that the statement of purpose refer to the various purposes, listed in subsection (3), for which private property may be condemned: private use; private ways of necessity; or reservoirs, drains, flumes, or ditches for agricultural, mining, milling, domestic, or sanitary purposes. *See* § 38–1–102(3); *see also* Colo. Const. art. II, § 14 (listing the same purposes).

The petition in this case specified one of the purposes listed in section 38–1–102(3): a private way of necessity. The petition elaborated that Condemnor sought the easement to provide physical access to her landlocked parcel in order to permit the use and enjoyment of her property. The plain meaning of the statute requires nothing more than this general statement of purpose. Nonetheless, Condemnor further clarified the purpose of the easement at her deposition and through testimony at the motion hearing that she intends to build one single-family home on her property and to use the driveway for the purpose of constructing, maintaining, and accessing that home. In its order condemning the easement, the trial court specified that the easement shall be used for building, construction, residence in, and maintenance of one single-family home. Having so specified, the trial court order ensures that Condemnees' concerns that Condemnor might rely on her easement to subdivide or commercially develop her property, thereby significantly increasing traffic over the driveway, will not be realized without triggering the law applicable to overburdening an easement by change of use. *See, e.g., Wright v. Horse Creek Ranches,* 697 P.2d 384 (Colo. 1985).

We find that Condemnor's petition—which contained an adequate description of the location and the purpose of the easement sought—alleged facts that, taken as true and viewed in the light most favorable to the plaintiff, supported her claim for a private way of necessity. Accordingly, the court of appeals properly determined that the trial court did not err in denying Condemnees' motion to dismiss.

## B. Valuation Evidence

### 1. Standard of Review

 A trial court has broad discretion over the admissibility of evidence. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 23 (Colo.2000). Accordingly, we review a trial court ruling on the admissibility of evidence for an abuse of discretion. *Id.*

 In general, all relevant evidence is admissible, CRE 402, and the Colorado Rules of Evidence strongly favor admission of material evidence, *Palizzi v. City of Brighton,* 228 P.3d 957, 962 (Colo.2010). CRE 103 and C.R.C.P. 61 allow reversal for erroneous exclusion of evidence only if the exclusion affected a substantial right of a party. CRE 103; C.R.C.P. 61; *Banek v. Thomas,* 733 P.2d 1171, 1178–79 (Colo.1987) (finding reversible error in civil battery case against arresting officers where the trial court's exclusion of evidence of plaintiff's conviction for resisting the arrest "left the jury with the impression [ ] he did nothing to warrant the use of any force"). An error affects a substantial right only if "it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Banek,* 733 P.2d at 1178. If an error does not affect a party's substantial right, it must be deemed harmless and is not grounds for reversal. CRE 103; C.R.C.P. 61.

### 2. Applicable Law

 Article II, section 15 of the Colorado Constitution provides that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation." Awards of just compensation are determined by a jury or a board of commissioners, Colo. Const. art. II, § 15, and are governed by sections 38–1–114 and –115, C.R.S. (2010). For a partial taking, just compensation includes the present fair market value of the property taken and damages to the residue of the property, less any special benefits that result from the taking. *See* § 38–1–114(1)– (2); *La Plata Elec. Ass'n, Inc. v. Cummins,* 728 P.2d 696, 698 (Colo.1986). The market value of the property taken is the price at which the property would sell, where the seller desires but is not obligated to sell the

property and where the buyer desires but is under no necessity to purchase it. *Bd. of County Comm'rs v. Noble*, 117 Colo. 77, 80, 184 P.2d 142, 143 (1947). Colorado's jury instruction regarding the value of condemned property defines market value as

> the fair, actual, cash market value of the property. It is the price the property could have been sold for on the open market under the usual and ordinary circumstances, that is, under those circumstances where the owner was willing to sell and the purchaser was willing to buy, but neither was under an obligation to do so.

CJI–Civ. 4th 36:3. Parties to a condemnation action may retain an appraiser to appraise the market value of the property to be condemned according to recognized appraisal practices consistent with the law. § 38-1-121(1), C.R.S. (2010).

The evidentiary rules applicable to a trial for an award of just compensation are expansive, and all evidence relevant to the determination of market value of the condemned property is admissible. *Palizzi*, 228 P.3d at 961. The fact finder may consider any competent evidence affecting the present fair market value of the land which a prospective seller or buyer would consider. *Id.* at 962. Some valuation evidence may be entitled to lesser weight but is still admissible and properly presented to the fact finder. *See id.* at 964–65.

The fact finder may consider evidence of market value based on three established real estate appraisal methods: the comparable sales method, which considers recent sales of comparable properties; the cost of construction method, which estimates value based on the cost of reproducing or replacing a particular improvement; and the income method, which considers the property's earning power. *Denver Urban Renewal Auth. v. Berglund–Cherne Co.*, 193 Colo. 562, 565, 568 P.2d 478, 480 (1977); Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed. 2008). Although the facts in any particular valuation case may make one method more appropriate than others, each of the three methods is intended to assist the fact finder in estimating the market value of the property taken. *Berglund–Cherne*, 193

Colo. at 565–66, 568 P.2d at 480–81. Accordingly, we have held that evidence based on any of the three appraisal methods generally is admissible:

> No purpose is served by limiting testimony to one approach or to the most appropriate method of attaining an opinion as to value. Recognition should be given to all relevant factors which tend to provide a means for arriving at a fair evaluation. The trier of fact has the duty to weigh the opinion and judge the credibility of an expert witness on value to determine which of the three approaches is most indicative of the actual market value of the property to be condemned.

*Id.* at 566–67, 568 P.2d at 481 (finding admissible the value of economic rent as evidence of income derived from the property). However, we also determined in *Berglund–Cherne* that the comparable sales method generally provides the best evidence of value. *Id.* at 565, 568 P.2d at 480.

Arguably at odds with our determination in *Berglund–Cherne*—that evidence based on any of the three appraisal methods generally is admissible—is Colorado case law holding that evidence of repair or replacement costs is admissible only where it aids in determination of market value. *Dandrea v. Bd. of County Comm'rs*, 144 Colo. 343, 349, 356 P.2d 893, 896 (1960); *Colo. Mountain Props., Inc. v. Heineman*, 860 P.2d 1388, 1392 (Colo. App.1993); *see also Scurvin Ditch Co. v. Roberts*, 58 Colo. 533, 534, 146 P. 233, 234 (1915). According to the Appraisal Institute, the cost of construction approach generally is applicable to new or relatively new improvements because "cost and market value are usually more closely related when properties are new." *The Appraisal of Real Estate* at 382.

### 3. Application to this Case

Condemnees assert that the trial court erred in excluding their expert's testimony regarding the contributory value of the driveway improvement, based on the cost of construction appraisal method. Condemnees would have valued the easement at one-third of the contributory value that the driveway

improvement added to the raw land, or one-third of the cost of constructing the driveway.

The trial court determined that the cost of constructing the driveway was not relevant to the jury's determination of the market value of the non-exclusive access easement over the existing driveway. The trial court reasoned that the cost of constructing an improvement does not assist the fact finder in determining the market value of an easement granting an additional user authority to utilize that improvement, particularly where the improvement was constructed prior to the condemnees' ownership of the property. In other words, the trial court found too tenuous the link between the cost of constructing the driveway, as if it never existed, the existing driveway's contributory value to Condemnees' property, and the market value of a non-exclusive access easement over the existing driveway.

Our evidentiary rules for property valuation in condemnation cases are expansive: the fact finder may consider any competent evidence affecting the market value of the condemned property which a prospective seller or buyer would consider. *Palizzi*, 228 P.3d at 961–62. Despite what might be a tenuous link between the cost of constructing the driveway and the value of the non-exclusive access easement over the existing driveway, it is possible that a prospective buyer or seller of the easement might factor into its market value the cost of constructing the driveway. Accordingly, the trial court should have admitted the cost of construction valuation evidence. *See id.*

Admitting such evidence accords with our precedent that valuation evidence need not be limited to the most appropriate of the three established appraisal methods and that the trier of fact is charged with determining which of the three approaches is most indicative of actual market value in a particular case. *See Berglund–Cherne*, 193 Colo. at 566–67, 568 P.2d at 481. Therefore, the tenuous link between the cost of constructing an improvement and the market value of a non-exclusive easement to use that existing improvement would affect the weight of the evidence, not its admissibility. *See Palizzi*, 228 P.3d at 964–65.

■ Our inquiry does not stop with the determination that the trial court should have admitted the cost of construction valuation evidence. Because the trial court has broad discretion to determine the admissibility of evidence, we may only reverse if we can say "with fair assurance" that the trial court's exclusion of that evidence "substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *E–470*, 3 P.3d at 23; *Banek*, 733 P.2d at 1178; CRE 103; C.R.C.P. 61. We cannot say with fair assurance that the trial court's error substantially influenced the jury's determination of easement value or impaired the basic fairness of the trial, so we do not reverse.

The trial court found that the cost of constructing a replacement driveway would not aid in determining the market value of the non-exclusive access easement over the existing driveway. The trial court's reasoning is supported by the proposition that evidence of replacement costs is admissible only where it aids in determination of market value. *See Dandrea*, 144 Colo. at 349, 356 P.2d at 896; *Heineman*, 860 P.2d at 1392; *Scurvin Ditch*, 58 Colo. at 534, 146 P. at 234.

Generally, valuation evidence based on the cost of construction appraisal method is important in determining the market value of new or relatively new improvements. *See The Appraisal of Real Estate* at 382. Where, as here, the improvement is decades old, the cost of construction approach should only be used "given adequate data to measure depreciation." *Id.* The testimony excluded at trial was to be based on an appraisal report prepared by the Blys' expert witness. That report contains no mention of depreciation data and instead finds Ms. Story should compensate the Blys for one-third the cost of a new road, unadjusted for depreciation. See Petitioner's Exhibit A to Motion in Limine to Exclude or Strike Respondents' Expert Witness' [sic] Testimony and Appraisal and to Exclude Prejudicial Testimony.

Both parties presented valuation evidence based on the comparable sales method: Con-

demnees' appraiser valued the easement at $7,857, and Condemnor's appraiser valued it at $1,215. The jury weighed this evidence and ultimately valued the easement at $3,300. The trial court admitted Condemnees' valuation evidence based on the comparable sales method, and the jury valued the easement based on that evidence. In general, the comparable sales method provides the best evidence of value, and the cost of construction method is only helpful in determining the market value of older improvements where adequate depreciation data is available. *Berglund–Cherne*, 193 Colo. at 565, 568 P.2d at 480; *The Appraisal of Real Estate* at 382. We cannot say with fair assurance that excluding the cost of construction evidence substantially influenced the jury's valuation of Ms. Story's easement or impaired the basic fairness of the trial. *Banek*, 733 P.2d at 1178. We conclude that the trial court's evidentiary ruling excluding valuation evidence based on the cost of construction appraisal method was not an abuse of discretion.

### III.

Accordingly, we affirm the judgment of the court of appeals.

Justice EID concurs in part and dissents in part, and Justice RICE joins in the concurrence and dissent.

Justice EID, concurring in part and dissenting in part.

I agree with the majority that the district court properly denied Condemnees' motion to dismiss and therefore join Part II.A. of its opinion. I disagree, however, with its conclusion that the trial court did not abuse its discretion in keeping cost of construction evidence from the jury. Maj. op. at 538. In this case, the district court permitted the jury to consider *only* the comparable sales method of valuation even though "no expert here could find comparable sales of driveway easements...." *Story v. Bly,* 217 P.3d 872, 881 (Colo.App.2008). We long ago rejected the district court's "single method" approach. *See Denver Urban Renewal Auth. v. Berglund–Cherne Co.,* 193 Colo. 562, 565, 568 P.2d 478, 480 (1977) ("No purpose is served by

limiting testimony to one [valuation] approach"). Where comparable sales evidence is limited, as in this case, it is an abuse of discretion to preclude the jury from considering methods of valuation other than the comparable sales method. Accordingly, I dissent from Part II.B. of the majority's opinion.

In this case, Condemnor sought to condemn a driveway easement, and the task of the jury was to place a value on that easement. As the majority points out, we have recognized three methods that may be useful in the valuation of condemned property: the income method, the comparable sales method, and the cost of construction method. *Berglund–Cherne*, 193 Colo. at 565, 568 P.2d at 480. Because there is no evidence that the driveway had been used as rental property or had generated any income, neither party suggests that the income method is particularly useful in this case. *See* maj. op. at 532 n. 3. The comparable sales method is not a perfect fit either, in that, as the court of appeals observed, "no expert here could find comparable sales of driveway easements." *Story,* 217 P.3d at 881. Given the lack of sales data regarding driveway easements, experts for both sides looked to sales of entire parcels of property comparable to the Condemnees' property—both with and without driveway access. *Id.* at 882; *see also* maj. op. at 532 n. 3.

But Condemnees also sought to introduce expert testimony regarding what it would cost to construct a driveway, under the theory that such evidence would be relevant to determining the value of a driveway easement. In my view, the district court abused its discretion in excluding the proffered cost of construction evidence and limiting the jury's consideration of evidence to comparable parcel sales.

First, over thirty years ago we expressly rejected the district court's "single method" approach to valuation:

> *No purpose is served* by limiting testimony to one approach or to the most appropriate method of attaining an opinion as to value. Recognition should be given to all relevant factors which tend to provide a means for arriving at a fair evaluation. The trier of

fact has the duty to weigh the opinion and judge the credibility of an expert witness on value to determine which of the three approaches is most indicative of the actual market value of the property to be condemned.

*Berglund–Cherne,* 193 Colo. at 566–67, 568 P.2d at 481 (emphasis added). *Cf. Palizzi v. City of Brighton,* 228 P.3d 957, 962 (Colo. 2010) ("The admissibility of evidence for property valuation is expansive, rather than restrictive."). In addition, the utility of the particular "single method" adopted by the district court (that is, the comparable sales approach) was limited in this case due to the fact that there were no comparable sales for what was actually being valued (that is, the driveway easement). In such an instance, "when a lack of market [data] limits the usefulness of the sales comparison approach," "[t]he cost approach is particularly important." Appraisal Institute, The Appraisal of Real Estate 382 (13th ed. 2008). *See also id.* ("[t]he cost approach may be used to develop an opinion of market value ... and is frequently applied to ... properties that are not frequently exchanged in the market...."); *ASARCO, Inc. v. Bd. of County Commissioners of Lake County,* 916 P.2d 550, 553 (Colo.App.1995) (the cost method should be employed when "the market and income approaches to valuation are inapplicable or do not produce" meaningful results).

The majority acknowledges that the "trial court should have admitted the cost of construction valuation evidence." Maj. op. at 537. But it then goes on to find that there was no abuse of discretion because "[w]e cannot say with fair assurance that the trial court's error substantially influenced the jury's determination of easement value or impaired the basic fairness of the trial." Maj. op. at 538. The majority's reasoning seems to be that, while the trial court erred, its error was harmless because there is only

a "tenuous link between the cost of constructing an improvement and the market value of a non-exclusive easement to use that existing improvement." Maj. op. at 537.

Significantly, the majority provides no explanation for its conclusion that the "link" between the cost of construction and the market value is "tenuous" in this case. Indeed, its conclusion is contrary to our longstanding recognition of the cost of construction valuation method, which establishes that there is such a connection. To put it simply, "[i]n any market, the value of a [structure] can be related to its cost." *The Appraisal of Real Estate* at 382. Here, it was for the jury to determine the relationship between cost and value in valuing the driveway easement.[1]

The majority also states that when "the improvement is decades old, the cost of construction approach should only be used 'given adequate data to measure depreciation.'" *Id.* at 537 (citing *The Appraisal of Real Estate* at 382). While the driveway may be "decades old," there is no reason that depreciation could not have been factored into the cost of construction. The majority points out that Condemnees' expert did not consider depreciation in arriving at a value, maj. op. at 537 but that is an issue for Condemnor (and Condemnor's expert) to raise, not a justification for total exclusion of the cost of construction evidence.

Ultimately, the determination of value is a question best left to the jury. Here, the jury was permitted to consider only the comparable sales method when comparable sales data was unavailable, and was prevented from hearing cost of construction evidence that would have given a more complete picture of value. In my view, it is by no means clear that the jury would have arrived at the same value had it been allowed to hear the cost of construction evidence.

---

1. The district court excluded the cost of construction evidence due to its concern that the cost of an improvement does not necessarily translate into value. *See* Transcript at 213 ("I don't get how you think the improvement of the road ... is something that would go into the value.... I can redo my whole kitchen and it would only increase a certain amount according to what the other houses in the areas were sold for"). It is not necessary, however, for there to be a one-to-one correlation between cost and value before the cost of construction method may be used. Instead, it is the jury's task (with the assistance of expert testimony) to determine what the relationship between cost and value might be in any particular case.

Finally, I note that the majority's opinion has implications beyond the valuation of a single driveway easement in an isolated mountain property. Every day appraisers are asked to set values for property interests that are infrequently bought and sold on the market. Consequently, market data to use in the evaluation process is lacking. It is precisely in these sorts of cases that the construction evidence is most useful. Because the jury in this case was precluded from considering such evidence, I respectfully dissent from Part II.B. of the majority's opinion.

I am authorized to say that Justice RICE joins in this opinion concurring in part and dissenting in part.