2012 COA 145

### PROGRESSIVE CASUALTY INSURANCE COMPANY, an Ohio corporation, Plaintiff–Appellee,

v.

### S. Bryan MOORE, Defendant–Appellant.

### No. 11CA1976.

Colorado Court of Appeals,
Div. I.

Aug. 30, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

Frank Patterson & Associates, P.C., Franklin D. Patterson, Brian D. Kennedy, Greenwood Village, Colorado, for Plaintiff–Appellee.

Mann & Maximon, LLC, Stuart D. Mann, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

¶ 1 In this declaratory judgment action, S. Bryan Moore appeals the judgment entered in favor of Progressive Casualty Insurance Company. We affirm.

## I. Background

¶ 2 Moore was involved in a car accident. When he sought insurance benefits from Progressive, he was told that his automobile insurance policy had expired months earlier.

¶ 3 Progressive filed an action seeking a declaration of the parties' rights and obligations under Moore's policy. At a bench trial, the parties stipulated to the following:

- Moore held an automobile insurance policy with Progressive from July 2009 to January 2010, at a premium of $910.50. The policy covered both liability and property damage.

- Progressive sent Moore two notices offering to renew the policy for the next six-month period at a premium of $924.50 (an increase of $14). Both notices were sent less than forty-five days before the original policy expired.

- Moore did not make a premium payment. He and Progressive did not communicate between the expiration date and the date of the accident.

¶ 4 Progressive asked the court to declare the following: (1) Moore's insurance policy expired for failure to pay the premium; (2) the policy was not in effect on the date of the accident; and (3) Moore was not entitled to any benefits under the policy.

¶ 5 Moore responded that, despite his nonpayment, the policy was still in effect. Relying on section 10–4–110.5, C.R.S.2011, he argued that the policy had renewed automatically because Progressive had failed to comply with the statutory notice requirements.

¶ 6 The trial court ruled that Moore's policy was not affected by section 10–4–110.5 because that statute applies to commercial insurance policies only. Accordingly, the court concluded that Moore's policy expired in January 2010.

**1126**

## II. Discussion

¶ 7 Moore contends that the trial court misapprehended the applicability of section 10–4–110.5. We disagree.

¶ 8 Statutory interpretation is a legal determination that triggers de novo review. *Bly v. Story,* 241 P.3d 529, 533 (Colo. 2010). Our goal is to effectuate legislative intent as expressed in the language of the statute. *Id.* We construe related statutes *in pari materia,* gathering legislative intent from the enactments as a whole. *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 & n. 6 (Colo.1991); *see also Dep't of Transp. v. Gypsum Ranch Co.,* 244 P.3d 127, 131 (Colo.2010) (if a term has different meanings in the abstract, "its intended meaning in a specific instance will often be apparent from the context, or statutory scheme, in which it appears").

¶ 9 Section 10–4–110.5 requires insurers to provide notice when they unilaterally increase premiums on certain insurance policies:

No insurer shall increase the premium unilaterally ... on renewal of a policy of insurance that provides coverages on commercial exposures such as general comprehensive liability, municipal liability, automobile liability and physical damage, fidelity and surety, fire and allied lines, inland marine, errors and omissions, excess liability, products liability, police liability, professional liability, or false arrest insurance unless the insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in advance a notice, accompanied by the reasons therefore, stating the renewal terms and the amount of premium due.

§ 10–4–110.5(1), C.R.S.2011.

¶ 10 If the requisite notice is not provided, "the insurer shall be deemed to have re-

newed the insured's policy for an identical policy period at the same terms, conditions, and premium as the existing policy." *Id.*

¶ 11 Moore argues that section 10–4–110.5 applies here because Progressive unilaterally increased its premium on a policy that covered "automobile liability and physical damage." But we disagree. Like the trial court, we conclude that section 10–4–110.5 applies only to *commercial* automobile insurance policies. Our conclusion rests on two observations:

1. By its plain terms, section 10–4–110.5 applies to policies that cover "commercial exposures." By implication, the statute does not apply to policies that cover noncommercial (or personal) exposures.[1] *See Beeghly v. Mack,* 20 P.3d 610, 613 (Colo.2001) (under the doctrine *expressio unius exclusio alterius,* "the inclusion of certain items implies the exclusion of others").

2. Moore's interpretation creates an unnecessary conflict between statutory provisions:

● We are concerned here with the meaning of this term: "a policy of insurance that provides coverages on commercial exposures." § 10–4–110.5(1). This term also appears in two related statutes, sections 10–4–109.7(1) and 10–4–110(1), C.R.S.2011. Because the statutes are closely related, the term should be given the same meaning throughout. *See Sigala v. Atencio's Market,* 184 P.3d 40, 45–46 (Colo.2008); *People v. Randell,* 2012 COA 108, ¶ 15 [—— P.3d ——, 2012 WL 2581025].

● Moore urges that the term be interpreted to include personal automobile insurance policies. If we were to adopt Moore's interpretation and ap-

---

1. The legislature recognizes the distinction between commercial and personal policies. *Compare* § 10–4–1401, C.R.S.2011 (certain commercial entities are capable of entering into "insurance coverage agreements" without the need for regulation), *and* §§ 10–4–109.7(4), 10–4–110(7), C.R.S.2011 (notice requirements for cancellation and nonrenewal of certain policies do not apply to insurers providing cover-

age to "exempt commercial policyholders"), *with* § 10–4–601(10), C.R.S.2011 (as used in the statutes addressing automobile insurance policy regulations, "policy" means an automobile insurance policy "insuring a single individual, or husband and wife, or family members residing in the same household" as the named insured).

ply it to the related provisions, those provisions would then conflict with statutes that regulate personal automobile insurance. Moore's interpretation would create, for example, inconsistent deadlines for sending notice of cancellation. *Compare* § 10–4–109.7(1) *with* § 10–4–603, C.R.S.2011. It would similarly create inconsistent deadlines for sending notice of nonrenewal. *Compare* § 10–4–110(1) *with* § 10–4–629, C.R.S 2011.

- Statutory language should be interpreted to avoid such conflicts. *See Wolford v. Pinnacol Assurance,* 107 P.3d 947, 951 (Colo.2005) (if provisions in the same statutory scheme can be interpreted to result either in harmony or in antagonism, the court should adopt the construction that results in harmony); *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 327 (Colo. 2004) ("In construing provisions of [an act], we read the statute as a whole and, if possible, construe its terms harmoniously, reconciling conflicts where necessary.").

¶ 12 The court found that Moore's policy was not commercial. (The court noted that Moore and his wife were the named insureds and that the policy and notices were sent to Moore's home.) After reviewing the record, we see no reason to disturb the court's finding. *See E–470 Public Highway Authority v. 455 Co.,* 3 P.3d 18, 22 (Colo.2000) (findings of fact are reviewed for clear error).

¶ 13 We therefore conclude that section 10–4–110.5 is inapplicable here, and it consequently does not matter whether Progressive's renewal notices were adequate.

¶ 14 The judgment is affirmed.

Judge TAUBMAN and Judge J. JONES, concur.